## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

YINLONG MA,

         Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A,

         Defendants.

Civil Action No.:

## COMPLAINT

Plaintiff, Yinlong Ma ("Plaintiff"), by and through undersigned counsel, hereby allege as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A (collectively, "Defendants"):

## INTRODUCTION

1. This is an action for patent infringement to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use, unauthorized and unlicensed products that infringe Plaintiff's United States Patent No. D943,729 S (the "'729 patent" or the "Asserted Patent"). The Asserted Patent is valid, subsisting, and in full force and effect. Plaintiff is the owner of all rights, title, and interest in and to the Asserted Patent, which was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '729 patent is attached as **Exhibit 1**.

1

2.      Defendants are, without authorization, offering for sale, selling, and/or importing products that embody the design depicted in the Asserted Patent, (collectively, the "Infringing Products").

3.      The Defendants have created numerous fully interactive commercial Internet stores operating under the online marketplace accounts (the "Defendant Internet Stores") and using the account names identified in Schedule A.

4.      The Defendants design their online marketplace accounts to appear to be selling genuine, authentic versions of Plaintiff's patented air cooler fans  (the "Patented Products"). In fact, Defendants are selling inferior imitations of such products.

5.      Defendants' online marketplace accounts share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale. These commonalities establish a logical relationship between the Defendants and suggest that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

6.      Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' infringement of the Asserted Patent, as well as to protect unknowing consumers from purchasing Infringing Products.

7.      As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged from the loss of their patent exclusivity and the resulting loss of market positioning. Accordingly, Plaintiff seeks injunctive relief as well as monetary relief.

8.      This Court has personal jurisdiction over each Defendant, in that each Defendant

conducts significant business in Florida and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Florida and in this Judicial District.

9. In addition, each Defendant has sold and shipped Infringing Products, and/or has offered to sell and ship Infringing Products, into this Judicial District.

## SUBJECT MATTER JURISDICTION

10. This Court has original subject matter jurisdiction over the patent infringement claims arising under the patent laws of the United States pursuant to 35 U.S.C. §§ 1 *et seq.*, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

## PERSONAL JURISDICTION AND VENUE

11. Personal jurisdiction exists over Defendants in this Judicial District pursuant to Florida Statutes §§ 48.193(1)(a)(1)–(2) and 48.193(1)(a)(6), or in the alternative, Fed. R. Civ. P. 4(k). Upon information and belief, Defendants regularly conduct, transact, and/or solicit business in Florida and in this Judicial District, and/or derive substantial revenue from business transactions in Florida and in this Judicial District, and/or otherwise avail themselves of the privileges and protections of the laws of the State of Florida. Therefore, this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

12. Further, Defendants' infringing acts have caused injury to Plaintiff in Florida and in this Judicial District. For this reason, Defendants should reasonably expect such actions to have consequences in Florida and this Judicial District.

13. Upon information and belief, Defendants were and/or are systematically targeting their business activities at consumers in the United States, including those in Florida, in this

Judicial District, through accounts with online marketplace platforms ("User Account(s)"[1]) such as Alibaba, AliExpress, Amazon, and Shein, (collectively, the "Marketplace Platforms"), without limitation.

14.     Through these User Accounts, consumers located throughout the United States, including Florida (and more particularly, in this Judicial District), can view Defendants' online marketplace accounts that each Defendant operates ("Defendant Internet Stores"). Through these User Accounts, U.S. consumers, including consumers located in Florida, can communicate with Defendants regarding their listings for Infringing Products (as defined below). Through these User Accounts, consumers located throughout the U.S., including those within Florida, can place orders for, receive invoices for, and purchase Infringing Products for delivery in the United States, including Florida and this Judicial District specifically. Thus, Defendants utilize User Accounts as a means for establishing regular business within the United States, including Florida, and more particularly this Judicial District.

15.     Upon information and belief, Defendants have transacted business with consumers located in the United States, including Florida (and more particularly, in this Judicial District), for the sale and shipment of Infringing Products.

### PLAINTIFF AND PLAINTIFF'S ASSERTED PATENT

16.     Plaintiff is an individual residing in, and a citizen of, the People's Republic of China, in the Henan province.

---

[1] As used herein, "User Account(s)" refers to the accounts held by Defendants with the Marketplace Platforms, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them.

4

17. Plaintiff applied for the '729 patent on September 18, 2020. The United States Patent and Trademark Office examined her application and issued the '729 patent, which is entitled "Air Cooler Fan," on February 15, 2022. A copy of the '729 patent is attached as **Exhibit 1**.

18. Plaintiff is the assignee of, owns all right, title and interest in, and has standing to sue for infringement of the '729 patent.

19. Plaintiff operates the online store depicted below.



20. Plaintiff has expended substantial time, money, and other resources in developing and promoting products that embody the design claimed in the Asserted Patent (collectively, "Plaintiff's Products").

## THE DEFENDANTS

21. Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

22. Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

5

**THE DEFENDANTS UNLAWFUL CONDUCT**

23.     The success of Plaintiff's Products has resulted in significant infringement of the Asserted Patent.

24.     Plaintiff has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as Alibaba, AliExpress, Amazon, and Shein, including the Defendant Internet Stores.

25.     The Defendant Internet Stores are making, using, offering for sale, selling, and/or importing into the United States, the Infringing Products. The Defendant Internet Stores are offering for sale and selling the Infringing Products to persons residing in the United States, including Florida, and this Judicial District in particular.

26.     Defendants have persisted in creating such online marketplaces and Internet stores, such as the Defendant Internet Stores.

27.     Online marketplaces and stores such as the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.

28.     According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the United States government in fiscal year 2021 was over $3.3 billion.

29.     Internet websites such as the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

30.     Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include

images and design elements that make it very difficult for consumers to distinguish such illicit sites from those held by authorized retailers.

31.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

32.     Plaintiff has not licensed or authorized Defendants to use the Asserted Patent, and none of the Defendants are authorized retailers of genuine versions of Plaintiff's Products.

33.     Defendants deceive unknowing consumers by incorporating the design claimed in the Asserted Patent into their Infringing Products without authorization.

34.     Defendants also intentionally attempt to attract purchasers by incorporating images of Plaintiff's patented design within the product descriptions display on their Defendant Internet Stores.

35.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.

36.     For example, it is common practice for infringers to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

37.     Upon information and belief, many Defendant Internet Stores use privacy services that conceal the owners' identity and contact information.

38.     Upon information and belief, to attempt to avoid detection and escape enforcement efforts, Defendants regularly create new websites and online marketplace accounts on various

platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses.

39.     Upon information and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names.

40.     Further, the Infringing Products that are offered for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that Defendants are interrelated.

41.     The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

42.     Additionally, Defendants in this action (as well as similarly situated defendants in other intellectual property enforcement campaigns) use a number of other common tactics to evade enforcement efforts. For example, infringers such as Defendants often register new online marketplace accounts once they receive notice of a lawsuit.[2]

---

[2]     https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites").

43.     Infringers also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[3]

44.     Infringers also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of infringing goods shipped through the mail and express carriers.

45.     Further, infringers such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation despite enforcement efforts.

46.     Upon information and belief, Defendants maintain off-shore bank accounts and regularly transfer funds from their U.S. accounts to these off-shore bank accounts outside the jurisdiction of the U.S. Courts. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the United States.

47.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully offered for sale and, upon information and belief, sold Infringing Products to consumers within the United States, including consumers within Florida and this Judicial District specifically, and/or have imported Infringing Products into the United States, including Florida and this Judicial District.

---

[3] Rogue internet servers and sellers are a well-known tactic that have even been discussed in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm.

48.     Each Defendant Internet Store offers shipping to the United States, including Florida (and this Judicial District in particular). Upon information and belief, each Defendant has offered to sell Infringing Products into the United States, including Florida and this Judicial District, which is likely to cause and has caused confusion among consumers and is irreparably harming Plaintiff.

**FIRST CAUSE OF ACTION**
**PATENT INFRINGEMENT (35 U.S.C. § 271)**

49.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–48 of this Complaint.

50.     Defendants are and have been making, using, selling, offering for sale, and/or importing into the United States for subsequent sale or use, without authority, Infringing Products that infringe directly and/or indirectly the Asserted Patent.

51.     For example, below is a comparison of figures from Plaintiff's Asserted Patent and images of one of Defendants' Infringing Products sold on a Defendant Internet Store.

| *EXEMPLARY FIGURE FROM THE ASSERTED PATENT* | *EXEMPLARY INFRINGING PRODUCT SOLD ON DEFENDANT INTERNET STORE* |
|---|---|
| | |

52. Defendants' activities constitute willful patent infringement under 35 U.S.C. § 271.

53. Defendants have infringed the Asserted Patent through the aforesaid acts and will continue to do so unless enjoined by this Court.

54. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention.

55. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

56. Plaintiff is entitled to recover damages adequate to compensate for the infringement pursuant to 35 U.S.C. §§ 284, 289, including Defendants' profits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

57. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiff and that include any reproduction, embodiment, copy or colorable imitation of the design claimed in the Asserted Patent;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine version of Plaintiff's Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Asserted Patent;

    c. further infringing the Asserted Patent and damaging Plaintiff's goodwill;

11

d.      aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the Asserted Patent;

e.      shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which infringe the Asserted Patent; and

f.      operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the making, using, offering for sale, selling, and/or importing into the United States of any product infringing the Asserted Patent.

58.     Entry of an Order that Alibaba, AliExpress, Amazon, and Shein and any other online marketplace account provider:

a.      disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products, including any accounts associated with the Defendants listed on Schedule A;

b.      disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products; and

c.      take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

59.     That Plaintiff be awarded such damages as it shall prove at trial against Defendants that are adequate to compensate Plaintiff for Defendants' infringement of the Asserted Patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

12

60.     That the amount of damages awarded to Plaintiff to compensate Plaintiff for infringement of Plaintiff's Asserted Patent be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

61.     In the alternative, that that Plaintiff be awarded all profits realized by Defendants from Defendants' infringement of Plaintiff's Asserted Patent, pursuant to 35 U.S.C. § 289;

62.     That Plaintiff be awarded its reasonable attorneys' fees and costs; and

63.     Award any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Date: March 24, 2026

Respectfully submitted,

By: /s/ Theodore J. Chiacchio

Theodore J. Chiacchio
**Pro Hac Vice Pending**
**CHIACCHIO IP, LLC**
307 N. Michigan Avenue, Ste. 806
Chicago, Illinois 60601
Telephone: (312) 919-2719
Email: tchiacchio@chiacchioip.com
Illinois Bar No.: 6332547

-and-

Michael J. Labbee
Florida Bar No. 106058
Email: michael@phlfirm.com
Tyler A. Hayden
Florida Bar No. 95205
Email: tyler@phlfirm.com
**Local Counsel**
**PHILLIPS, HAYDEN & LABBEE, LLP**
150 2nd Avenue North, Suite 1200
St. Petersburg, Florida 33701

13

Telephone: (727) 300-1399

***Counsel for Plaintiff***